## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Richard Hunstein,**

       *Plaintiff,*                Case No.:    8:21-cv-1484

       v.

**Commonwealth Financial Systems, Inc.,**      **JURY TRIAL DEMANDED**
**Amsher Collection Services, Inc.,**
**Experian Information Solutions, Inc.,** *and*
**Trans Union, LLC,**

       *Defendants.*
_____/

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Richard Hunstein,** ("**Mr. Hunstein**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Commonwealth Financial Systems, Inc.** ("**Commonwealth"), Amsher Collection Services, Inc. ("Amsher"), Experian Information Solutions, Inc.** ("**Experian**") and **Trans Union, LLC** ("**Trans Union**"), (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Hunstein against Experian and Trans Union for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**"), against Commonwealth and Amsher for violations of the *Fair Debt*

*Collection Practices Act*, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), and against Commonwealth only for violations of the *Florida Consumer Collection Practices Act*, Section 559.55, *et seq.*, Florida Statutes ("**FCCPA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's federal claims exists pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction over Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

5.      Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Mr. Hunstein

6.      **Mr. Hunstein** is a natural person residing in the city of Spring Hill, Polk County, Florida.

7.      Mr. Hunstein is a *Consumer* as defined by 15 U.S.C. § 1681a(c), 15 U.S.C. § 1692a(3), and Section 559.55(8), Florida Statutes.

## Experian and Trans Union

8.   **Experian** is an Ohio corporation, with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

9.   Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

10.   **Trans Union** is a Delaware limited liability company, with a primary business address of **555 West Adams Street, Chicago, Illinois 60661.**

11.   Trans Union is registered to conduct business in the State of Florida, where its registered agent is **The Prentice-Hall Corporation System, Inc., 1201 Hays Street, Tallahassee, Florida 32301.**

12.   Experian and Trans Union are *Consumer Credit Reporting Agencies* ("**CRAs**") within the meaning of 15 U.S.C. § 1681a(f), in that they, for monetary fees, regularly engage in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

## Commonwealth and Amsher

13.   Commonwealth is a Pennsylvania corporation with a primary business address of **245 Main Street, Dickson City, Pennsylvania 18519**.

14.     Commonwealth is registered to conduct business in the state of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.**

15.     Commonwealth is licensed as a Consumer Collection Agency ("**CCA**") by the Florida Office of Financial Regulation.

16.     Amsher is an Alabama corporation with a primary business address of **4524 Southlake Parkway, Suite 15, Hoover, Alabama 35244.**

17.     Amsher is registered to conduct business in the state of Florida, where its registered agent is **Corporation Service Company**, **1200 Hays Street, Tallahassee, Florida 32301.**

18.     Amsher is licensed as a CCA by the Florida Office of Financial Regulation.

19.     As licensed CCAs, Commonwealth and Amsher know, or should know, the requirements of the FDCPA and FCCPA.

20.     Commonwealth and Amsher are "*debt collectors*" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that they use an instrumentality of commerce, including postal mail and the internet, interstate and within the state of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly

collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### The Commonwealth Debt

21.     In or around September 2018, Mr. Hunstein allegedly incurred a debt (the "**Commonwealth Debt**") to Wheeler Peak Emergency Physicians ("**Wheeler**") for medical services, allegedly not covered by insurance.

22.     The alleged Commonwealth Debt arose from personal medical services and therefore meets the definitions of *debt* under the FDCPA, 15 U.S.C. §1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

23.     Around June 2019, Wheeler assigned, or otherwise transferred the Commonwealth Debt to AR Resources, Inc. ("**AR Resources**"), a Florida-based debt collector.

24.     In June 2019, AR Resources began reporting the Commonwealth Debt, monthly, to the major CRAs, including, Experian and Trans Union. **SEE PLAINTIFF'S EXHIBITS A & B.**

### Mr. Hunstein's Dispute of the Commonwealth Debt

25.     On or around October 28, 2019, Mr. Hunstein requested and obtained a copy of his consumer credit disclosure from Trans Union.

26.     Mr. Hunstein saw the AR Resources tradeline reporting to his credit and on that day, disputed AR Resources' reporting of the account.

27.     On or around November 11, 2019, Mr. Hunstein requested and obtained a copy of his consumer credit disclosure from Experian.

28.     Mr. Hunstein noticed the AR Resources tradeline was also reporting to Experian, and disputed AR Resources' reporting of the account to Experian.

29.     Trans Union and Experian, upon receipt of Mr. Hunstein's disputes, both sent AR Resources an Automated Consumer Dispute Verification ("**ACDV**") form through an online platform known as e-OSCAR and asked AR Resources to make a reasonable investigation into each dispute.

30.     AR Resources thus knew that Mr. Hunstein disputed the Commonwealth Debt, at least as early as October 28, 2019.

31.     AR Resources, in response to Mr. Hunstein's disputes, responded to the ACDVs that the accuracy of the reported information *could not be* verified and thus requested that Experian and Trans Union delete its tradelines.

32.     Trans Union sent Mr. Hunstein results of its dispute investigation on or around October 28, 2019, affirming the disputed information concerning the purported Commonwealth Debt had been deleted. **SEE PLAINTIFF'S EXHIBIT C.**

33.     A debt collector who becomes aware a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

### Disputed, Deleted Debt Re-Reported by Commonwealth

34.     On information and belief, AR Resources thereafter returned the Commonwealth Debt to Wheeler, noting that Mr. Hunstein disputed the account.

35.     In February 2021, Wheeler assigned the Commonwealth Debt to another debt collector – Commonwealth.

36.     On information and belief, Wheeler informed Commonwealth of Mr. Hunstein's existing dispute.

37.     In March 2021, Commonwealth, in turn, began reporting the Commonwealth Debt monthly to Experian and Trans Union. **SEE PLAINTIFF'S EXHIBITS D & E.**

38.     Commonwealth reported the same balance, account status, DOFD, original creditor and ECOA code as AR Resources.

39.     The only difference in the data was the "date assigned" for collection, "date of status" of the account being considered "in collection," and the "date first reported."

40.     Commonwealth failed to indicate that the Commonwealth Debt was disputed in its report concerning the Commonwealth Debt. ***Id.***

41.     The tradeline thus continued to appear on Mr. Hunstein's credit report as an "non-disputed" debt.

42.     Commonwealth is a large debt collector and receives a considerable number of disputes concerning medical debts it reports to CRAs. Commonwealth knew, when it received a portfolio of charged-off debts for collection from Wheeler in February 2021, which included Mr. Hunstein's purported Commonwealth Debt, that it was not the first collection agency to be assigned the account.

43.     Commonwealth thus knew—or reasonably should have known – a considerable number of the accounts had been previously disputed and had to be reported as such.

44.     On information and belief, Commonwealth has no policies in place to ask creditors, like Wheeler, who place debts for collection with it, whether the creditor was aware of any prior disputes by the relevant consumers.

45.     Assuming, *arguendo*, that Wheeler failed to disclose to Commonwealth the Commonwealth Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Foster v. Franklin Collection Service,* Civil Action Number 5:17-cv-00008-TES M.D. GA 9-13-2018 (holding that *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) is binding in the 11th Circuit, which "subjects debt collectors to liability even when violations are not knowing or intentional").

46.     Commonwealth's failure to disclose that the Commonwealth Debt was disputed materially damaged Mr. Hunstein's credit scores.

47.     The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Mr. Hunstein suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

### Commonwealth Makes Unauthorized Disclosures of Protected Information to Third Party

48.     Commonwealth, in an effort to collect the Commonwealth Debt from Mr. Hunstein, mailed Mr. Hunstein multiple collection letters, including one sent after assignment of the Commonwealth Debt in February 2021.

49.     However, rather than prepare and mail the February 2021 collection letter on its own, Commonwealth sent information to a commercial mail house (the "**Mail House**").

50.     Commonwealth disclosed highly personal information regarding Mr. Hunstein and the Commonwealth Debt to the Mail House, including:

- The nature of services rendered and the fact that the Debt concerned medical treatment;

- Mr. Hunstein's status as a debtor; and,

- The amount Mr. Hunstein supposedly owed to Wheeler.

51.     The Mail House then populated some, or all, of this information into a pre-written template, printed, and mailed the letter to Mr. Hunstein's residence in Florida.

52.     The term *Communication* is defined in the FDCPA, 15 U.S.C. §1692a(3), as "the conveying of information regarding a debt directly or indirectly to any person through any medium,"

53.     Commonwealth sent an electronic file containing information about Mr. Hunstein and the purported Commonwealth Debt to the Mail House.

54.     Commonwealth thus "communicated" with the Mail House pursuant to 15 U.S.C. §1692a(3).

55.     Commonwealth's communication to the Mail House involved disclosure of the Commonwealth Debt to a third-party with instructions to produce a collection letter and mail it to Mr. Hunstein, the consumer, with the objective that the correspondence would motivate the consumer to pay the alleged Commonwealth Debt.

56.     Commonwealth's communication to the Mail House was therefore in connection with the collection of the Commonwealth Debt.

57.     The Mail House is a distinct entity not owned by Commonwealth.

58.     The Mail House is not a consumer reporting agency as referenced in 15 U.S.C. § 1692c(b).

59.     The Mail House is not an attorney as referenced in 15 U.S.C. § 1692c(b).

60.     Mr. Hunstein never consented to having his personal and confidential information, concerning the Commonwealth Debt or otherwise, shared with any mail house.

61.     15 U.S.C. § 1692c(b) states:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. (Emphasis added).

62.     The Mail House does not fall within any of the categories listed within 15 U.S.C. § 1692c(b).

63.     Due to Commonwealth's communication to the Mail House, information about Mr. Hunstein and the purported Commonwealth Debt, including his name, the nature of services rendered, the original creditor's name, the current creditor's name, and the amount he supposedly owes as a result, are all within possession of a third party not expressly listed within 15 U.S.C. § 1692c(b).

64.     If a debt collector "conveys information regarding the debt to a third party – informs the third party that the debt exists or provides information about the details of the debt – then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

65.     Communications from debt collectors to mail houses are not exempt from the provisions of 1692c(b) and are "in connection with" the collection of a debt. *See Hunstein v. Preferred Collection & Mgmt. Servs.*, No. 8:19-cv-983 (11th Cir. April 21, 2021).

66.     Commonwealth devised this strategy of communicating to a third-party mail house so that it could churn out more collection letters than if it kept all of the work "in house."

67.     This mail house strategy allowed Commonwealth to generate more profit and gain an advantage over competitors.

68.     In reckless pursuit of these business advantages, Commonwealth disregarded the known, negative effects that disclosing sensitive personal information to an unauthorized third party would have on a consumer.

69.     Commonwealth's unauthorized and prohibited communications caused Mr. Hunstein, a consumer who highly values his privacy, significant emotional distress since his confidential, legally protected medical and personal information had been unlawfully disseminated to third parties.

**The Amsher Debt**

70.     In or around October 2018, Mr. Hunstein allegedly incurred a separate debt (the "**Amsher Debt**") to Charter Communications, formerly known as Brighthouse Networks ("**Charter**") for cable and internet services.

71.     The alleged Amsher Debt arose from services provided for cable and internet, and therefore meets the definitions of *debt* under the FDCPA, 15 U.S.C. §1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

72.     Around March 2019, Charter assigned, or otherwise transferred the Amsher Debt to Waypoint Resource Group, LLC. ("**Waypoint**"), a Pennsylvania-based debt collector.

73.     Waypoint thereafter began reporting the Amsher Debt, monthly, to Experian and Trans Union. **SEE PLAINTIFF'S EXHIBITS F & G.**

**Mr. Hunstein's Disputes of the Amsher Debt**

74.     Mr. Hunstein, having seen the Waypoint tradeline reporting to his credit with Trans Union and Experian, disputed Waypoint's reporting of the account to both CRAs.

75.     Trans Union and Experian, upon receipt of Mr. Hunstein's disputes, both sent Waypoint an ACDV form through e-OSCAR and asked Waypoint to make a reasonable investigation into the disputes.

76.     Waypoint, in response to Mr. Hunstein's disputes, responded to both ACDVs that the accuracy of the reported information *could* be verified and thus requested that Trans Union and Experian update the tradelines with the comment, "Account information disputed by consumer." **SEE PLAINTIFF'S EXHIBITS F & G.**

77.     A debt collector who becomes aware a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

78.     As evidenced by its reports to Trans Union, Waypoint knew that Mr. Hunstein disputed the Amsher Debt, at least as early as October 28, 2019.

### Disputed, Deleted Debt Re-Reported by Amsher

79.     At some point after November 2019, but prior to December 2020, Waypoint returned the Amsher Debt to Charter, noting that Mr. Hunstein disputed the account.

80.     Charter thereafter assigned the Amsher Debt to another debt collector – Amsher.

81.     On information and belief, Charter informed Amsher of Mr. Hunstein's existing dispute.

82.     Amsher, in turn, began reporting the Amsher Debt monthly to Experian and Trans Union, beginning in March 2021. **SEE PLAINTIFF'S EXHIBITS H & E.**

83.     Amsher reported the same balance, account status, DOFD, original creditor and ECOA code as Waypoint.

84.     The only difference in the data was the "date assigned" for collection, "date of status" of the account being considered "in collection," and the "date first reported."

85.     However, Amsher failed to indicate that the Amsher Debt was disputed in its report to Experian. **SEE PLAINTIFF'S EXHIBIT H.**

86.     The tradeline thus continued to appear on Mr. Hunstein's Experian credit report as an "non-disputed" debt.

87.     Amsher is a large debt collector and receives a considerable number of disputes concerning cable and internet debts it reports to CRAs. Amsher knew, when it received a portfolio of charged-off debts for collection from Charter in December 2020, which included Mr. Hunstein's purported Amsher Debt, that it was not the first collection agency to be assigned the accounts.

88.     Amsher thus knew, or reasonably should have known, that a considerable number of the accounts had been previously disputed and had to be reported as such.

89.     On information and belief, Amsher has no policies in place to ask creditors, like Charter, who place debts for collection with it whether the creditor was aware of any prior disputes by the relevant consumers.

90.     Amsher's failure to disclose that the Amsher Debt was disputed materially damaged Mr. Hunstein's credit scores.

### Experian and Trans Union's Failure to Maintain Reasonable Procedures

91.     Pursuant to 15 U.S.C. § 1681i(a)(5)(C), Experian and Trans Union were required to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted...."

92.     Commonwealth reported information which had previously been deleted in response to a dispute from Mr. Hunstein, changing only the "date assigned" for collection, but leaving all other information unchanged.

93.     On information and belief, Experian's and Trans Union's systems are programmed to consider information about a particular debt to be "different" so long as the debt collector reporting the debt is a different entity.

94.     However, changing the name of the debt collector does not change the underlying account.

95. Had Experian and Trans Union used reasonable procedures, their systems would have flagged the previously-deleted data and blocked it from being reinserted.

96. Additionally, on information and belief, Experian and Trans Union did not verify that the AR Resources tradeline which they had previously deleted could now be verified as accurate by Commonwealth, contrary to the requirements of 15 U.S.C. § 1681i(a)(5)(B)(i).

97. Even assuming, *arguendo*, that Experian and Trans Union had obtained the FCRA-mandated verification of accuracy to reinsert the Commonwealth tradeline into Mr. Hunstein's reports, it would still be inherently unreasonable to include information from a furnisher of data when that same information had been deleted in response to an ACDV, indicating that the information **could not be** confirmed as accurate.

98. Experian and Trans Union also failed to mail written notices to Mr. Hunstein stating that they were reinserting previously-deleted information, disclosing the business name and address of the furnisher of information making such verification, and explaining to Mr. Hunstein that he has the right to add a statement disputing the accuracy of the supposed Commonwealth Debt.

99.    As a result of Experian and Trans Union's actions, disputed unverifiable, previously-deleted information was reinserted into Mr. Hunstein's credit reports, without the legally-required notice of dispute.

### Defendants Report False 'Date of Status'

100.    The "date of status" of a collection account indicates the date an account was first designated to be "in collection." *Cf. Baker v. Capital One Bank*, No. CV 04–1192 PHX–NVW, 2006 WL 2523440, at \*4–\*5 (D.Ariz. Aug. 29, 2006).

101.    Amsher's report indicating a "date of status" of December 2020 thus falsely implies that the account was first referred for collection in December 2020, even though the true date was March 2019.

102.    Likewise, Commonwealth's report indicating a "date of status" of February 2021 falsely implies that the account was first referred for collection in February 2021, even though the true date was August 2019.

103.    The "date of status" is a key point of data evaluated by many versions of FICO® credit scores, including FICO Model 2, used by Experian and Trans Union for mortgage evaluations. The more recent the "date of status," the more adverse the information is factored against the consumer. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013).

104.    Further, "(a)reasonable jury could find that the 'Date of status' entry was "misleading in such a way and to such an extent that it can be expected to

adversely affect credit decisions." *Id*. (quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890 (5th Cir. 1998)).

105.    Experian and Trans Union were aware from AR Resources' prior reporting that the February 2021 "date of status" for the Commonwealth Debt was not accurate, as the Commonwealth Debt had been reported with a status of "in collection" at least since June 2019.

106.    Likewise, Experian and Trans Union were aware from Waypoint's prior reporting that the December 2020 "date of status" for the Amsher Debt was not accurate, as the Amsher Debt had been reported with a status of "in collection" at least since March 2019.

107.    Experian and Trans Union nonetheless accepted Commonwealth and Amsher's reporting without question and re-incorporated both accounts into Mr. Hunstein's data file and included the tradelines in reports sold concerning him.

## Defendants Report False 'Date Opened"

108.    Commonwealth reported to Experian that the Wheeler account had a "Date Opened" of March 2021. **SEE PLAINTIFF'S EXHIBIT D.**

109.    Commonwealth's reported information is false. Mr. Hunstein's medical services were rendered with Wheeler in 2018.

110.    Likewise, Amsher reported to Experian that the Charter account had a "Date Opened" of December 2020. **SEE PLAINTIFF'S EXHIBIT H.**

111.    Amsher's reported information is false. Mr. Hunstein's Charter account was opened well before December 2018.

112.    Experian was aware that Commonwealth and Amsher's reported information was false, since both accounts had been reported to Experian prior to the dates they were now being reported as "opened."

113.    A reasonable and prudent reader of Mr. Hunstein's credit report would infer that an account indicating a balance owed to Wheeler reflecting a "Date Opened" of February 2021 means – as the plain language implies – the account was opened with Wheeler in February 2021. *Toliver,* 973 F. Supp. 2d 707, 721 ("Here, there is no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report.... (A) reasonable jury could find that the "Date opened" entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

114.    Likewise, a reasonable and prudent reader of Mr. Hunstein's credit report would infer that an account indicating a balance owed to Charter reflecting a "Date Opened" of December 2020 means – as the plain language implies – the account was opened with Wheeler in December 2020, and was therefore far more recent than was actually the case.

115.    Records from Experian indicate that it has sold at least **11** consumer reports regarding Mr. Hunstein containing the errant Amsher and Commonwealth tradelines.

116.    Experian and Trans Union have been sued in the past for reinserting previously-deleted accounts without notice to the consumer and are thus aware that their procedures frequently result in the inclusion of previously-deleted, disputed accounts, without verification or notice to the consumer.

117.    Experian and Trans Union's conduct warrants an award of punitive damages.

118.    As a result, Mr. Hunstein has suffered damages including loss of credit and damage to his reputation.

119.    Mr. Hunstein has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees and / or has assigned his right to attorney fees and costs to the law firm.

**COUNT I**
**EXPERIAN'S VIOLATIONS OF THE FCRA**

120.    Mr. Hunstein adopts and incorporates paragraphs 1 – 119 as if fully stated herein.

121.    Experian violated 15 U.S.C. § **1681e(b)** when it failed to use reasonable procedures to ensure maximum possible accuracy of consumer reports sold

regarding Mr. Hunstein, when it prepared reports on at least 11 occasions which included an account furnished by accounts furnished to it by Amsher and Commonwealth containing false "Dates Opened" and "Status Dates," when Experian knew, or should have known, from the prior reporting of the accounts, that this information was false.

122.    Experian violated 15 U.S.C. § **1681i(a)(5)(B)(i)** when it failed to obtain certification of accuracy of previously-deleted information, specifically, the disputed AR Resources tradeline, and reinserted this information into his credit files without verification via the Commonwealth tradeline.

123.    Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2)** when it failed to provide written notice that it was reinserting previously-deleted information into Mr. Hunstein's credit file, when it re-inserted the disputed Commonwealth tradeline without notice to Mr. Hunstein.

124.    Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(I)** when it failed to provide any written notice to Mr. Hunstein that it was reinserting previously-deleted information, when it re-inserted the disputed Commonwealth tradeline without notice to Mr. Hunstein.

125.    Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2)** in that it failed to provide the business name and address of the entity associated with the reinsertion of the previously-deleted information.

126.    Experian violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2I)** when it failed to provide written notice that Mr. Hunstein had the right to have a statement of dispute included in his file regarding the re-inserted tradeline.

127.    Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously-deleted tradelines.

128.    Experian's policies could reasonably be foreseen to cause harm to Mr. Hunstein.

129.    Indeed, as a result of Experian's conduct, Mr. Hunstein suffered damage to his credit report and scores, as well as emotional distress in having to deal with an account which he thought had been deleted as a result of his dispute.

130.    As a result of its conduct, Experian is liable to Mr. Hunstein, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Hunstein respectfully requests this Honorable Court enter judgment against Experian and for him for:

a.    The greater of statutory damages of **$1,000** per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Hunstein's actual damages and

related economic and non-economic injuries pursuant to 15 U.S.C. §

1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b.      Punitive damages for Experian's willful and intentional acts;

c.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C.

§1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.      Such other relief that this Court deems just and proper

## COUNT II
## <u>TRANS UNION'S VIOLATIONS OF THE FCRA</u>

131.   Mr. Hunstein adopts and incorporates paragraphs 1 – 119 as if fully

stated herein.

132.   Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(i)** when it failed to

obtain certification of accuracy of previously-deleted information, specifically, the

disputed AR Resources tradeline, and reinserted this information into his credit

files without verification via the Commonwealth tradeline.

133.   Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2)** when it failed to

provide written notice that it was reinserting previously-deleted information into

Mr. Hunstein's credit file, when it re-inserted the disputed Commonwealth

tradeline without notice to Mr. Hunstein.

134.   Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(I)** when it failed to

provide any written notice to Mr. Hunstein that it was reinserting previously-

deleted information, when it re-inserted the disputed Commonwealth tradeline without notice to Mr. Hunstein.

135.   Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2)** in that it failed to provide the business name and address of the entity associated with the reinsertion of the previously-deleted information.

136.   Trans Union violated 15 U.S.C. § **1681i(a)(5)(B)(2i)(2I)** when it failed to provide written notice that Mr. Hunstein had the right to have a statement of dispute included in his file regarding the re-inserted tradeline.

137.   Trans Union's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the re-insertion of previously-deleted tradelines.

138.   Trans Union's policies could reasonably be foreseen to cause harm to Mr. Hunstein.

139.   Indeed, as a result of Trans Union's conduct, Mr. Hunstein suffered damage to his credit report and scores, as well as emotional distress in having to deal with an account which he thought had been deleted as a result of his dispute.

140.   As a result of its conduct, Trans Union is liable to Mr. Hunstein, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Hunstein respectfully requests this Honorable Court enter judgment against Trans Union and for him for:

a. The greater of statutory damages of **$1,000** per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Hunstein's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b. Punitive damages for Trans Union's willful and intentional acts;

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d. Such other relief that this Court deems just and proper

## COUNT III
## COMMONWEALTH'S VIOLATIONS OF THE FDCPA

141. Mr. Hunstein adopts and incorporates paragraphs 1 – 119 as if fully stated herein.

142. Commonwealth violated **15 U.S.C. § 1692e and 1692e(10)** when Commonwealth made false and/or misleading representations in an attempt to collect the Commonwealth Debt, when it reported the Commonwealth Debt to Experian, claiming the "status date" of the Commonwealth Debt (e.g., the date which the account became a collection) was February 2021, when it was August 2019 or earlier, that the account had been "first reported" as of March 2021, when

it had been reported since August 2019 or earlier, and that the Commonwealth Debt was not disputed, when it was disputed.

143.    Commonwealth violated **15 U.S.C. § 1692e(8)** when Commonwealth communicated credit information known to be false, specifically, the "status date" of the Commonwealth Debt (e.g., the date which the account became a collection) was February 2021, when it was August 2019 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since August 2019 or earlier, and that the Commonwealth Debt was not disputed, when it was disputed.

144.    Commonwealth violated **15 U.S.C. § 1692e(8)** when Commonwealth communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian and Trans Union in March 2021.

145.    Commonwealth violated **15 U.S.C. § 1692e(2)(a)** when Commonwealth made false and misleading representations about the character, amount and legal status of the Commonwealth Debt when it falsely claimed the "status date" of the Commonwealth Debt (e.g., the date which the account became a collection) was February 2021, when it was August 2019 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since August 2019 or earlier, and that the Commonwealth Debt was not disputed, when it was disputed.

146.   Commonwealth's actions render it liable for the above-stated violations of the FDCPA, and Mr. Hunstein is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

147.   Commonwealth violated **15 U.S.C. § 1692c(b)** in that it communicated information about the Commonwealth Debt to the Mail House, a third party, without Mr. Hunstein's consent or other permissible purpose, and the Mail House was not an attorney for the creditor, the creditor, an attorney for Commonwealth, or a consumer reporting agency.

148.   Commonwealth's actions caused Mr. Hunstein to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account which he thought had been deleted as a result of his dispute.

**WHEREFORE,** Mr. Hunstein respectfully requests this Honorable Court enter judgment against Commonwealth and for him as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## AMSHER'S VIOLATIONS OF THE FDCPA

149.   Mr. Hunstein adopts and incorporates paragraphs 1 – 119 as if fully stated herein.

150.   Amsher violated **15 U.S.C. § 1692e and 1692e(10)** when Amsher made false and/or misleading representations in an attempt to collect the Amsher Debt, when it reported the Amsher Debt to Experian, claiming the "status date" of the Amsher Debt (e.g., the date which the account became a collection) was December 2020, when it was May 2019 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since April 2019 or earlier, and that the Amsher Debt was not disputed, when it was disputed.

151.   Amsher violated **15 U.S.C. § 1692e(8)** when Amsher communicated, to Experian, credit information known to be false, specifically, the "status date" of the Amsher Debt (e.g., the date which the account became a collection) was February 2021, when it was April 2019 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since April 2019 or earlier, and that the Amsher Debt was not disputed, when it was disputed.

152.   Amsher violated **15 U.S.C. § 1692e(8)** when Amsher communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian in March 2021.

153.    Amsher violated **15 U.S.C. § 1692e(2)(a)** when Amsher made false and misleading representations about the character, amount and legal status of the Amsher Debt when it falsely claimed the "status date" of the Amsher Debt (e.g., the date which the account became a collection) was December 2020, when it was August 2019 or earlier, that the account had been "first reported" as of March 2021, when it had been reported since April 2019 or earlier, and that the Amsher Debt was not disputed, when it was disputed.

154.    Amsher's actions render it liable for the above-stated violations of the FDCPA, and Mr. Hunstein is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Hunstein respectfully requests this Honorable Court enter judgment against Commonwealth and for him as follows:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT V
## COMMONWEALTH'S VIOLATION OF THE FCCPA

155.   Mr. Hunstein adopts and incorporates paragraphs 1 – 119 as if fully stated herein.

156.   Commonwealth violated **Section 559.72(5), Florida Statutes**, when it disclosed to the Mail House, a third party, information that would affect Mr. Hunstein's reputation, specifically details about his personal financial and medical issues, and purported unpaid bills. Commonwealth was aware that there was no legitimate business *need* to convey this information, since Commonwealth could easily have prepared and mailed the letter itself without any need to disclose the information to a third party.

157. Instead, Commonwealth *intentionally decided* to disclose this information to the Mail House as part of its debt collection effort against Mr. Hunstein because it allowed Commonwealth to gain a competitive advantage over the competition through increased profit margins.

158.   Commonwealth's conduct renders it liable for the above-stated violations of the FCCPA, and Mr. Hunstein is therefore entitled to statutory damages not to exceed $1,000 as well as other relief.

**WHEREFORE,** Mr. Hunstein respectfully requests this Honorable Court enter judgment against Commonwealth, for:

a.   Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.   Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.   Injunctive relief preventing Commonwealth from making any further communications to the unauthorized third party when attempting to collect a consumer debt.

d.   Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e.   Such other relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on June 18, 2021, by:

**SERAPH LEGAL, P.A.**

*/s/ Bryan J. Geiger*
Bryan J Geiger, Esq.
FL Bar Number: 119168
1614 N. 19th St.
Tampa, FL 33605
(813) 321-2348
BGeiger@SeraphLegal.com
*Counsel for Plaintiff*

**EXHIBIT LIST**
A.  Plaintiff's Experian Consumer Disclosure, November 11, 2019, AR Resources Account
B.  Plaintiff's Trans Union Consumer Disclosure, October 18, 2019, AR Resources Account
C.  Plaintiff's Trans Union Dispute Results, October 28, 2019
D.  Plaintiff's Experian Consumer Disclosure May 31, 2021, Commonwealth Debt
E.  Plaintiff's Credit Karma Report, Reflecting Information Reported by Trans Union, June 8, 2021, Excerpt
F.  Plaintiff's Experian Consumer Disclosure, November 11, 2019, Waypoint Account
G.  Plaintiff's Trans Union Consumer Disclosure, October 18, 2019, Waypoint Account
H.  Plaintiff's Experian Consumer Disclosure May 31, 2021, Amsher Debt